UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

BILLY RAY ROBERSON,                                  CASE NO. 13-06327-8-SWH
                                                     CHAPTER 7

               DEBTOR.

---

MOTION TO COMPEL COMPLIANCE WITH ORDER ALLOWING
MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE

---

NOW COMES BILLY RAY ROBERSON (the "Debtor"), by and through his undersigned counsel of record, and pursuant to § 105 of the Bankruptcy Code, Fed. R. Bankr. P. 9020, and E.D.N.C. LBR 9011-3, and hereby respectfully moves the Court for entry of an Order, compelling THE INTERNAL REVENUE SERVICE (the "IRS" or "Creditor") to comply with the terms of the Order Allowing Motion for Approval of Settlement and Compromise [D.E. 46] on December 7, 2017 (the "Settlement Order") and related Settlement Agreement and Mutual Release executed by the Debtor on November 6, 2017, and the IRS on December 13, 2017 (the "Settlement Agreement") (the Settlement Order and the Settlement Agreement are collectively referred to herein as, the "Settlement"), and requiring the IRS pay, in addition to those amounts that it is required to pay under the terms of the Settlement, the reasonable attorneys' fees, costs, and expenses that the Debtor incurred in compelling compliance with the provisions of the Settlement.  In support hereof, the Debtor shows unto this Court as follows:

## JURISDICTION AND AUTHORITY

1.     This Court possesses jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 as it arises in and concerns matters affecting the administration of bankruptcy estate in the above-captioned case, *see id.* §157(b)(2)(A), and concerns rights duly established under the

2

Settlement Order entered by this Court and the provisions of the Bankruptcy Code.   This Motion, as well as the monetary and injunctive relief requested herein, constitute a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).

2.       The Court, under and pursuant to paragraph 6 of the Settlement Order, retained jurisdiction to address, resolve and adjudicate any disputes or controversies arising from or relating to the Settlement Order, including interpretation, construction, and enforcement thereof. See Order Allowing Mot. for Approval of Settlement and Compromise [D.E. 46], at ¶ 6 ("The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to the interpretation, construction, and enforcement of this Order and any attendant documents executed between the Parties effectuating the settlement and resolution of the Dispute forming the basis of the Contempt Motion.").

3.       The Court, likewise, has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

## FACTUAL BACKGROUND

4.       The Debtor, who is an individual citizen and resident of Raleigh, North Carolina, filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code on October 8, 2013 (the "Petition Date"), BK Case No. 13-06327-8-SWH (the "Bankruptcy Case").  Holmes P. Harden was appointed, to administer the Bankruptcy Case, as Chapter 7 Trustee (the "Trustee").

5.       As of the Petition Date, the Debtor owed outstanding income taxes assessed for the tax years ending December 31, 2001 (the "2001 Tax Year"), December 31, 2002 (the "2002 Tax Year"), December 31, 2003 (the "2003 Tax Year"), December 31, 2004 (the "2004 Tax Year"),

3

December 31, 2005 (the "2005 Tax Year"),    December 31, 2006 (the "2006 Tax Year"),

December 31, 2007 (the "2007 Tax Year"), December 31, 2008 (the "2008 Tax Year"), and

December 31, 2009 (the "2009 Tax Year"), which were listed on Schedule F filed in the

Bankruptcy Case, as unsecured non-priority claims and are more particularly described as follows:

| Tax Year | Tax Return Filing Date | Amount of Claim |
|---|---|---|
| 2001 Tax Year | December 2, 2007 | $15,122.43 |
| 2002 Tax Year | March 20, 2008 | $41,235.09 |
| 2003 Tax Year | May 15, 2007 | $63,482.30 |
| 2004 Tax Year | July 7, 2008 | $38,632.72 |
| 2005 Tax Year | February 26, 2007 | $19,808.15 |
| 2006 Tax Year | August 9, 2007 | $24,906.94 |
| 2007 Tax Year | April 15, 2008 | $8,529.56 |
| 2008 Tax Year | April 15, 2009 | $12,207.28 |
| 2009 Tax Year | April 15, 2010 | $6,402.92 |

(the "Unsecured Nonpriority Taxes").

6.    On November 11, 2013, and in the Bankruptcy Case, the Trustee filed the Chapter

7 Trustee's Report of No Distribution (the "Trustee's Report") in the Bankruptcy Case,[1] under

---

[1] The Trustee's Report provided as follows:

> I, Holmes P Harden, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 7150.00, Assets Exempt: $ 2038.72, Claims Scheduled: $ 267847.52, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 267847.52.

4

which claims totaling $267,847.52 were to be discharged without payment (the "Discharged Claims").

       7.     On January 8, 2014, the Court entered the Discharge of Debtor [D.E. 13] (the "Discharge") pursuant to § 524, which provided as follows:

### EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

**Collection of Discharged Debts Prohibited**

      The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to damages and attorney's fees to the debtor.

      However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

**<u>Debts That are Discharged</u>**

      The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If the case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

Following entry of the Discharge, and given that the above-captioned case had been fully administered by the Trustee, the Court entered the Final Decree [D.E. 14] on January 8, 2014, closing the Bankruptcy Case.

5

8.      After entry of the Discharge and the Final Decree, the IRS engaged in conduct, communications, and actions, including but not limited to the remittance of demand letters, notices, and correspondence, the purpose of which was to collect the outstanding balance of the Unsecured Priority Taxes, all of which were discharged by the Discharge and § 524 of the Bankruptcy Code.  In addition, the IRS threatened to (1) seize up to fifteen percent (15%) of the benefit payments that he is entitled to from the Social Security Administration (the "Social Security Benefits"), (2) levy against his wages, bank accounts, assets, and property, (3) charge further penalties and interest against the unpaid balances of the Unsecured Nonpriority Taxes that had been previously discharged, and (4) otherwise seize the assets and property belonging to the Debtor.  These actions, including the remittance of each of the IRS Demand Letters to the Debtor, constitute actions taken in furtherance of collection of tax obligations that were discharged by the Bankruptcy Code, and undertaken in willful disregard of the Discharge granted to the Debtor in the Bankruptcy Case.

9.      On May 9, 2016, and in response to the collection efforts of the IRS, the Debtor notified the IRS, in writing, that its attempts to collect any portion of the Unsecured Nonpriority Taxes were unlawful, erroneous, and otherwise prohibited by the Discharge and the provisions of the Bankruptcy Code, and that he intended to seek an Order from the Court holding the IRS in contempt, and imposing sanctions against it, if the IRS did not cease its collection efforts relating to debts that had been previously discharged in the Bankruptcy Case (the "Administrative Claim Notice").

10.     On May 11, 2017, and following the reopening of the Bankruptcy Case, the Debtor filed a Motion for Contempt and Sanctions Against Creditor Internal Revenue Service [D.E. 23]

6

(the "Contempt Motion"), seeking an Order holding the IRS in contempt, and requesting the imposition of sanctions, including reasonable attorneys' fees and expenses, arising from its willful violations of the Discharge and the provisions of the Bankruptcy Code.

11.      On June 2, 2017, the IRS filed the United States' Response to Debtor's Motion for Contempt and Sanctions [D.E. 31] (the "IRS Response") in the Bankruptcy Case, admitting that the tax liabilities associated with the 2002 Tax Year, the 2003 Tax Year, and 2004 Tax Year, were discharged as part of the Bankruptcy Case, but reserved the right to apply a portion of the funds seized from the Debtor, totaling $6,513.85, from his income tax refunds for the tax years ending December 31, 2014 (the "2014 Tax Refund"), December 31, 2015 (the "2015 Tax Refund"), and December 31, 2016 (the "2016 Tax Refund") (collectively, the "Seized Refunds"), to the income tax liabilities for the tax years ending December 31, 2010, totaling $3,730.70 (the "2010 Tax Liability") and December 31, 2011, totaling $114.14 (the "2011 Tax Liability").

12.      The Debtor and the IRS, following the filing of the IRS Response, and in advance of a hearing on the Contempt Motion, reached an agreement to resolve the Contempt Motion, including any and all claims which have been or could have been asserted by and against the IRS, including the Debtor's tax liability for the 2001 Tax Year, the 2002 Tax Year, the 2003 Tax Year, the 2004 Tax Year, the 2005 Tax Year, the 2006 Tax Year, the 2007 Tax Year, the 2008 Tax Year, and the 2009 Tax Year (collectively, the "Dispute").  The resolution reached between the Debtor and the IRS was memorialized in the Settlement Agreement, which was specifically approved, and signed by, both the Debtor and the IRS on November 6, 2017, and December 13, 2017, respectively.  A copy of the Settlement Agreement, executed by the Debtor on November 6, 2017, is attached hereto as **EXHIBIT A** and incorporated herein by reference, whereas the copy of the

7

Settlement Agreement executed by the IRS on December 13, 2017, is attached hereto as **EXHIBIT B** and incorporated herein by reference.

13.     This Court, in the Settlement Order, a copy of which is attached hereto as **EXHIBIT C** and incorporated herein by reference, specifically approved and authorized the terms and provisions of the Settlement Agreement.

14.     The Settlement, which was agreed to, and binding upon both the Debtor and the IRS, can be summarized as follows:

    A.  <u>Monetary Settlement Payment</u>. Within thirty (30) business days of the Effective Date,[2] the IRS or its designee shall pay to Stubbs & Perdue, P.A., as counsel for the Debtor, the sum of ELEVEN-THOUSAND SEVEN-HUNDRED FORTY-NINE DOLLARS AND 89 CENTS ($11,749.89), representing the attorneys' fees and expenses incurred in connection with procuring the relief requested in the Contempt Motion (the "Monetary Settlement Payment"), which is inclusive of all attorney's fees, sanctions, costs, and expenses sought by the Debtor in the Contempt Motion against the IRS.

    B.  <u>Satisfaction and Complete Discharge of Tax Liability for Prepetition Tax Years.</u>  In accordance with the Discharge, the operative provisions of the Bankruptcy Code, and in full resolution of the Dispute, the IRS in consideration for resolution set forth herein, agrees to discharge, waive, and cancel any and all income tax liability, accrued interest, fees, expenses, and penalties and other amounts assessed against the Debtor arising from the following applicable tax periods ending: (1) December 31, 2001; (2) December 31, 2002; (3) December 31, 2003; (4) December 31, 2004; (5) December 31, 2005; (6) December 31, 2006; (7) December 31, 2007; (8) December 31, 2008; and (9) December 31, 2009.[3]

    C.  <u>Non-Monetary Provisions & Reimbursement of Tax Refunds and Seized Amounts.</u>

---

[2]  The "Effective Date" shall be the date upon which the last Party executes the Settlement Agreement.

[3] For the avoidance of any doubt, and as of the Effective Date, the Debtor's tax liability for these tax periods shall be $0.00, such that the IRS shall have no right to collect tax liability from the Debtor for these tax periods.

8

i.  The IRS shall transfer, within thirty (30) days of the Effective Date, the sum of $2,876.50, that was previously offset from the income tax refund to which the Debtor was entitled for the 2013 Tax Year (the "2013 Tax Refund") and applied to the outstanding tax liabilities owed for the 2003 Tax Year (collectively, the "2013 Tax Refund Offset"), in full satisfaction of the tax liability owed for the tax year ending December 31, 2010 (the "2010 Tax Liability"). The overpayment resulting from application to the 2010 Tax Liability, in the amount of $3.71 (the "2010 Tax Overpayment"). The 2010 Tax Overpayment shall be remitted and furnished by the IRS, to the Debtor, directly.

ii.  The IRS shall transfer, within thirty (30) days of the Effective Date, the sum of $1,081.85, which was previously levied and seized by the IRS on November 9, 2015 (the "November 2015 Levy"), to the outstanding tax liability owed by the Debtor for the 2011 Tax Year (the "2011 Tax Liability"), which results in an overpayment of the 2011 Tax Liability in the amount of 972.84 (the "2011 Tax Overpayment").[4] The 2011 Tax Overpayment shall be remitted and furnished by the IRS, to the Debtor, directly.

iii.  The IRS shall remit directly to the Debtor, within thirty (30) days of the Effective Date, the sum of $235.50, plus interest from April 15, 2014, representing to income tax refund to which the Debtor was entitled for the 2013 Tax Year (the "2013 Tax Refund").

iv.  The IRS shall remit directly to the Debtor, within thirty (30) days of the Effective Date, the sum of $926.00, plus interest from April 15, 2015, representing to income tax refund to which the Debtor was entitled for the 2014 Tax Year (the "2014 Tax Refund").

v.  The IRS shall remit directly to the Debtor, within thirty (30) days of the Effective Date, the sum of $1,394.00, plus interest from April 15, 2016, representing to income tax refund to which the Debtor was entitled for the 2015 Tax Year (the "2015 Tax Refund").

vi.  The IRS shall remit directly to the Debtor, within thirty (30) days of the Effective Date, the sum of $1,889.00, plus interest from April 15, 2017, representing to income tax refund to which the Debtor was entitled for the 2016 Tax Year (the "2016 Tax Refund").

---

[4] The sum of $976.65, representing the 2010 Tax Overpayment and the 2011 Tax Overpayment, shall be remitted directly to the Debtor by the IRS.

9

      D.   <u>Withdrawal of Motion for Contempt and Sanctions Against Creditor Internal Revenue Service</u>.  Within ten (10) days of delivery and receipt of the Monetary Settlement Payment to Stubbs & Perdue, P.A., and performance of the non-monetary obligations by the IRS contained above, the Debtor shall withdraw the Contempt Motion, with prejudice, reflecting that the Dispute has been resolved and settled.

15.    The Effective Date of the Settlement, as defined in the Settlement Agreement, was December 13, 2017, which is the date upon which the IRS executed the Settlement Agreement.

16.    In accordance with the provisions of the Settlement Agreement, which were adopted, incorporated and set forth in the Settlement Order, the IRS was required to remit the Monetary Settlement Payment to Stubbs & Perdue, P.A., as counsel for the Debtor, within thirty (30) business days of the Effective Date.  Wednesday, January 24, 2018, is the thirtieth (30) business day following the Effective Date (the "Monetary Settlement Payment Deadline"), and the date upon which the IRS was required to pay the Monetary Settlement Amount under the Settlement Agreement and the Settlement Order.

17.    Debtor's counsel, on February 6, 2018, sent an electronic email message to Megan E. Hoffman-Logsdon ("Ms. Hoffman-Logsdon"), counsel who had appeared on behalf of the IRS in the Bankruptcy Case in opposition to the Contempt Motion, filed the IRS Response, and executed the Settlement Agreement on behalf of the IRS, inquiring into the status of remittance of the Monetary Settlement Payment (the "February 6th Email"), a copy of which is attached hereto as **EXHIBIT D** and incorporated herein by reference.

18.    The February 6th Email, likewise, advised counsel for the IRS that the Monetary Settlement Payment Deadline had lapsed and, to date, payment had not been received from the IRS.

10

19.     Approximately nine (9) minutes later, Ms. Hoffman-Logsdon sent a reply email message, stating that she had no idea that the Monetary Settlement Payment had not been paid by the IRS (the "February 6th Email Reply").  A copy of the February 6th Email Reply is attached hereto as **EXHIBIT E** and incorporated herein by reference.

20.     After replying to the initial email received from Debtor's counsel, Ms. Hoffman-Logsdon requested—by email dated February 6, 2018, at 2:15 P.M., the Debtor's current address, so she could "track down the status of his application at the judgment fund[]" (the "Current Address Request Email").  A copy of the Current Address Request Email is attached hereto as **EXHIBIT F** and incorporated herein by reference.

21.     Debtor's counsel responded to Ms. Hoffman-Logsdon, providing the Debtor's current address, however, informed her that per the terms of the Settlement, the Monetary Settlement Payment was to be delivered to Stubbs & Perdue, P.A., as counsel for the Debtor (the "Current Address Request Email Reply").  A copy of the Current Address Request Email Reply is attached hereto as **EXHIBIT G** and incorporated herein by reference.

22.     Approximately six (6) calendar days later, on February 12, 2018, and without any further information or response from Ms. Hoffman-Logsdon, Debtor's counsel sent Ms. Hoffman-Logsdon an electronic e-mail communication requesting an update on the status of payment of the Monetary Settlement Payment and informing her, as counsel for the IRS, indirectly, that if necessary—the Debtor was prepared to request an Order from the Court compelling compliance with the Settlement Order (the "February 12th Email").  A copy of the February 12th Email is attached hereto as **EXHIBIT H** and incorporated herein by reference.

23.     Debtor's counsel, in response to the February 12th Email, received an automatic

11

reply message from the email server utilized by the United States Department of Justice, which stated as follows:

> I am out of the office beginning on February 8, 2018, and will return on February 13, 2018. I will have occasional access to email at this time.  If you need assistance, please contact Selena Johnson at (202) 307-2051 or Linda Ward at Linda.M.Ward2@usdoj.gov.

24.     As of the filing of this *Motion to Compel Compliance with Order Allowing Motion for Approval of Settlement and Compromise* (the "Motion"), neither the Debtor nor his undersigned counsel, have received any further communication from Ms. Hoffman-Logsdon or the IRS, nor has undersigned counsel received the Monetary Settlement Payment that was required to be paid by the IRS on or before January 24, 2018.

<u>**REQUEST FOR RELIEF**</u>

25.     "'Settlement agreements are generally construed according to the principles of contract law.'" <u>Fanning v. Potter</u>, 614 F.3d 845, 848 n.2 (8th Cir. 2010) (quoting <u>Myers v. Richland Cty</u>, 429 F.3d 740, 749 (8th Cir. 2005)). Settlement agreemetns, which are approved by bankruptcy courts, pursuant to Federal Rule of Bankruptcy Procedure 9019, are enforceable pursuant to Federal Rule of Bankruptcy Procedure 9019(a). Fed. R. Bankr. P. 9019(a); <u>see</u> <u>Am. Prairie Constr. Co. v. Hoich</u>, 594 F.3d 1015, 1024 (8th Cir. 2010) (holding, in the context of a chapter 11 case, that settlement is not enforceable until approved by the court).

26.     Section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to issue orders or make any determination necessary to enforce, implement or prevent an abuse of the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. See <u>Marrama v. Citizens Bank of Mass.</u>, 549 U.S. 365 (2007) (holding that § 105(a) grants bankruptcy courts "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'"

12

(citation omitted). Section 105(a), in its entirety, reads as follows:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title. No provision of this title
> providing for the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any determination
> necessary or appropriate to enforce or implement court orders or rules, or to prevent
> an abuse of process.

11 U.S.C. § 105(a).

27.     Apart from § 105(a) and similar to their Article III counterparts, bankruptcy courts

"enjoy inherent power to sanction parties for improper conduct." Mapother & Mapother, P.S.C. v.

Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996).  Pursuant to its inherent contempt

powers, a bankruptcy court may sanction conduct "which abuses the judicial process." Chambers

v. NASCO, Inc., 501 U.S. 32, 44–45 (1991).  Conduct abusive of the judicial process includes,

inter alia, "willful disobedience of a court order." Id. at 45-46; see Barnes v. Dalton, 158 F.3d

1212, 1214 (11th Cir. 1998) (emphasizing that, in addition to vexatious, wanton or oppressive

conduct, bad faith conduct includes "hampering enforcement of a court order"). As the Supreme

Court observed in Chambers, courts are "'vested, by their very creation, with power to impose

silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" 501

U.S. at 43 (quoting Anderson v. Dunn, 6 Wheat. 204, 227 (1821)). "This inherent authority is

essential to the administration of justice, and exists in addition to sanctions available under

specific statutes or Rules." 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE

¶ 1690 (3d ed. 2012).

28.     To enforce and carry out the provisions of their orders and the Bankruptcy Code,

courts have the authority to "issu[e] sanctions in the form of 'actual damages, attorney's fees, and

when appropriate, punitive damages.'" In re Kirkbride, No. 08-00120, 2010 WL 4809334, at *3

13

(Bankr. E.D.N.C. Nov. 19, 2010) (quoting In re Cherry, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000)); see, e.g., Am. Airlines Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance *with the court's order,* and to compensate the complainant for losses sustained."). Bankruptcy courts "have inherent contempt powers in all proceedings, including bankruptcy, 'to achieve the orderly and expeditious disposition of cases[,]'" Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1553 (11th Cir. 1996) (citation omitted), including civil contempt, the purpose of which is to "coerc[e] compliance with the orders of the court and/or to compensate a party for losses incurred as a result of the noncompliance." In re Armstrong, 99 B.R. 713, 714 (Bankr. E.D.N.C. 1989).[5]

29.    Following entry of the Settlement Order, on December 7, 2017, and execution o the Settlement Agreement by the IRS on December 13, 2017, the IRS was required to comply with the

---

[5] Bankruptcy courts, likewise, "have inherent contempt powers in all proceedings, including bankruptcy, 'to achieve the orderly and expeditious disposition of cases.'" Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1553 (11th Cir. 1996) (citation omitted). The purpose of civil contempt is to "coerc[e] compliance with the orders of the court and/or to compensate a party for losses incurred as a result of the noncompliance." In re Armstrong, 99 B.R. 713, 714 (Bankr. E.D.N.C. 1989).

    In the Fourth Circuit, and to establish civil contempt, the proponent must establish each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (internal quotations omitted); *accord* In re Adams, 2010 WL 2721205, at *2 (Bankr. E.D.N.C.), aff'd, 2011 U.S. Dist. LEXIS 158090, No. 5:10-CV-340-BR (E.D.N.C. Jan. 24, 2011).

14

provisions of both the Settlement Order and the Settlement Agreement.  At issue here, and pursuant to both the Settlement Order and the Settlement Agreement, the IRS was required to remit—to Debtor's counsel—the Monetary Settlement Payment on or before January 24, 2018, which was thirty (30) days following the Effective Date.

30.    The IRS, as a party to the Settlement Agreement, had actual and/or constructive notice and knowledge of the obligations and requirements that were placed upon it thereunder. See Maryland v. Antonell Creditors' Liquidating Tr., 123 F.3d 777, 783 (4th Cir. 1997) (recognizing that "for purposes of enforcing bankruptcy orders, we inquire whether . . . the notice received was 'of such a nature as reasonably to convey the required information.'" (quoting Mullane v. Central Hanover Bank & Tr., 339 U.S. 306, 314 (1950))).  With this knowledge, and understanding that it was required to remit the Monetary Settlement Payment within thirty (30) business days of the Effective Date (or January 24, 2018), it failed to comply with the terms of the Settlement Order and the Settlement Agreement and pay the Monetary Settlement Payment required thereunder. The IRS, in addition, has failed to provide the Debtor and its counsel with any information regarding the status of, or timeframe applicable, to its purported performance of the obligations that were imposed upon it under the terms of the Settlement.

31.    As illustrated above, the subjective beliefs and intent of the IRS, in undertaking these methods, is irrelevant in determining whether it possessed actual or constructive knowledge of the provisions of the Settlement Order and the Settlement Agreement.  See Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996).  By executing the Settlement Agreement, and receiving notice of the Settlement Motion, and the corresponding Settlement Order, the IRS cannot escape the fact that it possessed actual and constructive knowledge of the

15

provisions of both the Settlement Order and the Settlement Agreement, and its obligations thereunder, including payment of the Monetary Settlement Amount. These actions, alone, are sufficient to establish that the IRS had actual and constructive knowledge of the provisions of the Settlement Order for purposes of establishing civil contempt. See Jove, 92 F.3d at 1555-56.

32.    Notwithstanding the continued efforts of Debtor and his counsel to facilitate the compliance of the IRS, and as of the filing of this Motion, the IRS has not paid the Monetary Settlement Payment that was required under both the Settlement Order and the Settlement Agreement. The refusal by the IRS to comply with the provisions of the Settlement Order and the Settlement Agreement, both of which were binding upon it, were willful in that this failure to perform those obligations were intentional and, at all times relevant hereunder, the IRS knew that the deadline for payment of the Monetary Settlement Payment was January 24, 2018. With this knowledge, the IRS consciously disregarded its obligations and responsibilities under the Settlement Order and the Settlement Agreement by refusing to pay the Monetary Settlement Payment. To date, and despite being advised that it was in violation of the terms of the Settlement Order and the Settlement Agreement, the IRS has not remitted the Monetary Settlement Payment to the Debtor or his counsel. Receipt of notice of entry of the Settlement Order is sufficient to establish the knowledge element of the two-part test. See Hardy, 97 F.3d at 1390 (emphasizing that receipt of notice stating that a debtor received a discharge  is  sufficient to establish the knowledge element for contempt); Jove, 92 F.3d at 1555–56.

33.    Additionally and as a direct result of the aforementioned willful violations of the Settlement Order and refusal to comply with the obligations under the Settlement Agreement, the Debtor was forced to incur additional attorneys' fees, costs, and expenses associated with

16

compelling and coercing the compliance of the IRS with the terms of the agreed-upon Settlement, including those associated with the preparation and prosecution of this Motion.  The attorneys' fees, costs, and expenses that were incurred by the Debtor were reasonable and necessary to protect the rights and entitlements that he received under the terms of the Settlement Order and the Settlement Agreement. See Cherry, 247 B.R. 176, 186 ("A court's authority to enforce its own orders by assessing attorney's fees for the willful violation of a court order and a court's empowerment to award fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons are other exceptions to the American Rule." (citing Pennsylvania v. Del. Valley Citizens Council for Clean Air, 478 U.S. 546, 562 n.6 (1986)).

34.    After commencing the above-captioned case, being laid financially bare and scrutinized under the Bankruptcy Code, and securing the settlement and resolution of the Contempt Motion through the Settlement Order and the Settlement Agreement, the Debtor performed every requirement placed upon him by the Settlement Order, the Settlement Agreement, and the provisions of the Bankruptcy Code with the expectation that he would receive the benefits that the IRS agreed to be bestow under the terms of the Settlement.  On the contrary, the IRS' actions "have not only had an impact on the debtor[] in terms of time and energy consumption, but also in [his] ability to obtain a fresh start through bankruptcy." Kirkbride, 2010 WL 4809334, at *2; see In re Barbour, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987) ("There is nothing more essential to a bankruptcy case than the preservation of the integrity of a debtor's discharge.").

17

## CONCLUSION

**WHEREFORE** and for all of the foregoing reasons, the Debtor respectfully requests that the Motion be **ALLOWED** and entry of an Order providing the following relief:

1. Compelling or otherwise requiring the IRS to immediately comply with the terms of the Settlement Order and accompanying Settlement Agreement;

2. Requiring the IRS immediately pay the Monetary Settlement Payment to Stubbs & Perdue, P.A., as counsel for the Debtor, as required under the terms of the Settlement Order and the provisions of the Settlement Agreement;

3. Awarding, as sanctions against the IRS for its non-compliance with the Settlement Order and accompanying Settlement Agreement, the reasonable attorneys' fees, costs, and expenses that were incurred by the Debtor and his counsel in compelling the compliance of the IRS with the terms and provisions thereof, in an amount to be determined at the hearing on this matter; and

4. Allowing such further relief as the Court may deem just and proper.

Respectfully submitted, this the 2nd day of March, 2018.

**STUBBS & PERDUE, P.A.**

BY: _____s/Joseph Z. Frost_____

JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615
Telephone:  (919) 870-6258
Telecopy:   (919) 870-6259

*Counsel for Debtor Billy Ray Roberson*

18

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

**BILLY RAY ROBERSON,**                              **CASE NO. 13-06327-8-SWH**
                                                      **CHAPTER 7**

              **DEBTOR.**

---

**NOTICE OF MOTION TO COMPEL COMPLIANCE WITH ORDER ALLOWING**
**MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE**

---

**NOTICE IS HEREBY GIVEN** of the **MOTION TO COMPEL COMPLIANCE WITH ORDER ALLOWING MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE** ("Motion") filed simultaneously herewith by BILLY RAY ROBERSON (the "Debtor") in the above-captioned case; and

      **YOUR RIGHTS MAY BE AFFECTED.** You should read these papers carefully and discuss them with your attorney, if you have one in the above-captioned bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

      If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the Motion, then on or before **MARCH 19, 2018,** unless otherwise ordered, you or your attorney must file with the Court, pursuant to E.D.N.C. LBR 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at the following address:

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**Post Office Box 791**
**Raleigh, North Carolina 27602**

As a Filing User of the Court's Case Management Electronic Case Filing System ("CM/ECF System") you may be required to electronically file a response. If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above. You must also mail a copy to the attorney whose name appears at the bottom of this notice, to the Bankruptcy Administrator, and to other parties in interest.

      If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Motion at a date, time and place to be later set and all parties will

19

be notified accordingly.  Any party filing a response to the Motion shall appear at any hearing in support of the objection or may be assessed with costs.

     If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

     Respectfully submitted this, the 2nd day of March, 2018.

               **STUBBS & PERDUE, P.A.**

               JOSEPH Z. FROST (NCSB No. 44387)
               jfrost@stubbsperdue.com

               9208 Falls of Neuse Road, Suite 201
               Raleigh, North Carolina 27615
               Telephone:    (919) 870-6258
               Telecopy:    (919) 870-6259

               Counsel for Debtor Billy Ray Roberson

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is, and at all times hereinafter was, more than eighteen (18) years of age and that on this day, copies of the foregoing **MOTION TO COMPEL COMPLIANCE WITH ORDER ALLOWING MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE** and **NOTICE OF MOTION** were electronically filed with the CM/ECF system, notification of which was remitted to the following CM/ECF participants:

Holmes P. Harden, Esq.
WILLIAMS MULLEN
Post Office Drawer 1000
Raleigh, North Carolina 27602
*Chapter 7 Trustee*

Teresa Weik, Esq.
WEIK LAW OFFICE, P.C.
812 Salem Wood Drive, Suite 102
Raleigh, North Carolina 27615

Megan Hoffman-Logsdon
UNITED STATES DEPARTMENT OF JUSTICE
Post Office Box 277, Ben Franklin Station
Washington, District of Columbia 20044
*Counsel for the United States of America and Internal Revenue Service*

The undersigned further certifies that true and accurate copies of the foregoing were placed in a postage pre-paid envelope and deposited with the United States Postal Service for mailing via first-class mail delivery, properly addressed as follows:

Billy Ray Roberson
4204 Windsor Place
Raleigh, North Carolina 27609

Megan Hoffman-Logsdon
UNITED STATES DEPARTMENT OF JUSTICE
Post Office Box 277, Ben Franklin Station
Washington, District of Columbia 20044
*Counsel for the United States of America and Internal Revenue Service*

Executed this, the 2nd day of March, 2018.

    s/Joseph Z. Frost
JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

STUBBS & PERDUE, P.A.
9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615